IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| INSTEEL WIRE PRODUCTS COMPANY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | 1:07CV641 |
| DYWIDAG SYSTEMS INTERNATIONAL USA, INC., | ) ) ) ) | |
| Defendant. | ) ) | |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion by Defendant Dywidag Systems International USA, Inc. [Document #46] seeking to dismiss or stay these proceedings in light of ongoing parallel proceedings in the Ohio Court of Claims with respect to certain of the claims asserted in this case. This case involves claims relating to purchases of "wire strand" by Defendant Dywidag Systems International USA, Inc. ("DSI") from Plaintiff Insteel Wire Products Company ("Insteel"). In the Complaint in this case, Insteel brings its claims in two separate counts. Count 1 is a claim for breach of contract. In that count, Insteel alleges that in 2006, DSI ordered and Insteel sent 73 shipments of wire strand to DSI, which DSI accepted but failed to pay for, resulting in claims by Insteel for $1,380,506.66, plus interest and attorney's fees, related to these 2006 shipments. In Count 2, Insteel brings a separate claim for a Declaratory Judgment regarding a dispute between Insteel and DSI over a 2002 purchase of epoxy-coated wire strand. This dispute relates to wire strand that Insteel sold to DSI for DSI to use in a bridge construction project in Toledo, Ohio, pursuant to a separate agreement between DSI and the Ohio Department of Transportation. In 2006, the Ohio Department of Transportation

notified DSI that the epoxy-coated wire strand had cracked and was not in conformance with the project specifications. DSI attempted to address these concerns and notified Insteel that DSI expected Insteel to indemnify it for any potential damages. As a result, Insteel has asserted the claims set out in Count 2, seeking a declaration that the 2002 epoxy-coated wire strand conformed to specifications and that Insteel has no liability to DSI related to the 2002 epoxy-coated wire strand sale.

The claims in Count 2, related to the 2002 epoxy-coated wire strand for the Ohio bridge, have been the subject of parallel proceedings in the Ohio Court of Claims. DSI filed suit against both the Ohio Department of Transportation and Insteel, and the Ohio Department of Transportation counterclaimed against DSI. In light of this ongoing litigation in Ohio related to the epoxy-coated wire strand, DSI filed the present Motion to Dismiss or Stay. In the Motion, DSI contends that the Ohio Department of Transportation is a necessary and indispensable party to the dispute over the epoxy-coated wire strand used in the Ohio bridge project. DSI also notes that proceeding with Count 2 in this Court could expose DSI to inconsistent obligations and would waste judicial and private resources, since the claims related to the 2002 epoxy-coated wire strand are being litigated in the Ohio Court of Claims, and the Ohio Department of Transportation is participating in that litigation. DSI therefore contends that Count 2 should be dismissed under Federal Rule of Civil Procedure 12(b)(7) for failure to join an indispensable party, or alternatively, that the proceedings in this Court should be stayed in favor of the ongoing proceedings in the Ohio Court of Claims related to Count 2.

Insteel filed a Response opposing the Motion to Dismiss or Stay. In the Response, Insteel

contends that the claims in Count 1, related to the 2006 shipments, do not relate to the dispute regarding the epoxy-coated wire strand used in the Ohio project. Insteel further notes that there is no contention that the Ohio Department of Transportation, or any other third party, is a necessary party as to the breach of contract claims in Count 1. Insteel notes that the claims in Count 1 relate to shipments by Insteel to DSI in Haiti, Texas, Florida, Georgia, Maryland, and Ohio. In contrast, only the Count 2 claim for Declaratory Judgment relates to the 2002 purchase of epoxy-coated wire strand for the Ohio project. With respect to the claims in Count 2, Insteel concedes that those claims are being litigated in the Ohio Court of Claims, and Insteel has filed a Memorandum of Supplemental Authority noting that the Ohio Court of Claims has ruled in Insteel's favor relating to Insteel's statute of limitations defenses, granting Insteel's motion for summary judgment in that case and dismissing DSI's claims against Insteel, which all related to the 2002 epoxy-coated wire strand sale. DSI has filed an appeal of that decision in Ohio. It therefore appears that the claims related to the 2002 epoxy-coated wire strand shipments are in the process of being resolved in the parallel litigation in Ohio.[1]

In considering DSI's Motion to Dismiss or to Stay, the Court notes that Insteel's claims in Count 2, related to the 2002 epoxy-coated wire strand used in the Ohio project, are claims for

---

[1] According to an affidavit submitted by Insteel, Count 1 relates to Purchase Order Numbers 228357, 228358, 238275, 241814, 226994, 234150, 226581, 236829, and 135066 for sales to DSI at various locations in 2006. In contrast, the dispute related to the epoxy-coated strand for the Ohio bridge project relates to separate Purchase Order 126496, which is the subject of the parallel proceeding in the Ohio Court of Claims. With respect to the breach of contract claims asserted in Count 1, there is some dispute regarding the timing of Purchase Order 135066, which may relate to a purchase order for shipments of "bare strand" sent to Ohio for the bridge project, but there is no indication that any of the breach of contract claims in Count 1 relate to the sale of epoxy-coated wire strand that is the subject of the parallel Ohio proceedings.

Declaratory Judgment. The Federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction," a Federal district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).[2] However, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Wilton v. Seven Falls Co., 515 U.S. 277, 288, 115 S. Ct. 2137, 2143, 132 L. Ed. 2d 214 (1995). Thus, the Declaratory Judgment Act "does not impose a mandatory obligation upon the federal courts to make such declarations of rights. Rather, a district court's decision to entertain a claim for declaratory relief is discretionary." Aetna Cas. & Sur. Co. v. Ind-Com Electric Co., 139 F.3d 419, 421 (4th Cir. 1998).[3]

In exercising this discretion, the Fourth Circuit has noted that a declaratory judgment action is appropriate "'when the judgment will serve a useful purpose in clarifying and settling

---

[2] Although the Complaint requests a Declaratory Judgment under state law, the Declaratory Judgment Act is procedural in nature and upon removal, the provisions of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., will apply. See Jones v. Sears Roebuck & Co., 301 Fed. Appx. 276, 281 n.12 (4th Cir. 2008) (citing Chapman v. Clarendon Nat'l Ins. Co., 299 F. Supp. 2d 559, 562-563 (E.D. Va. 2004)).

[3] The Court notes that DSI does not address this standard, and instead asks this Court to abstain under the standard set out in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). In Colorado River, the Supreme Court noted that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," and federal courts may decline to exercise this jurisdiction only in "exceptional circumstances." Id. at 817, 96 S. Ct. at 1246. However, the Colorado River standard differs from the "broad discretionary . . . standard governing a district court's determination whether to exercise jurisdiction over a declaratory judgment action." Great American Ins. Co. v. Gross, 468 F.3d 199, 210-11 n.7 (4th Cir. 2006).

4

the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)). The Declaratory Judgment Act "should not be used 'to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted.'" Id. at 256-57 (quoting Quarles, 92 F.2d at 325). The Court's discretion is to be guided by these criteria and by considerations of federalism, efficiency, and comity, including consideration of the following factors: "'(i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (iii) whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law'; and (iv) whether the declaratory judgment action is being used merely as a device for 'procedural fencing' – that is, 'to provide another forum in a race for res judicata' or 'to achieve a federal hearing in a case otherwise not removable.'" Centennial Life, 88 F.3d at 257 (citing Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir. 1994)) (internal brackets omitted).

 Applying these standards with respect to Count 2 in the present case, the Court notes that Count 2 seeks a declaration from this Court that the 2002 epoxy-coated wire strand used in the Ohio bridge project met specifications and that Insteel is not liable to DSI for any claims related to the 2002 epoxy-coated wire strand. However, DSI has asserted its claims against

5

Insteel related to the 2002 epoxy-coated wire strand in the Ohio Court of Claims, all based on the underlying claims by the Ohio Department of Transportation. Many of the issues related to whether the epoxy-coated wire strand met specifications involve general contentions by the Ohio Department of Transportation that the wire strand lacked required epoxy, was defective, and had cracks, as well as issues of storage and handling of the wire strand by the Ohio Department of Transportation, and issues regarding whether the Ohio Department of Transportation properly rejected all of the wire strand. The Ohio Department of Transportation is a party to the proceeding in the Ohio Court of Claims, but could not be brought in as a party in the present case. See New Wellington Financial Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 298 (4th Cir. 2005) (citing Centennial Life, 88 F.3d at 258) (noting that "the presence of other parties and issues in the state action not present in the federal declaratory judgment action is 'particularly salient.'"). Therefore, attempting to resolve these issues in this case, without the presence of the Ohio Department of Transportation, would not serve to settle the legal and factual issues, and would result in piecemeal resolution of overlapping issues.

In addition, in considering the specific factors set out by the Fourth Circuit, the Court notes that with respect to the strength of the state's interest, in particular the state of Ohio, in having the issues raised in the federal declaratory action decided in the state courts, in this case the claims related to the 2002 epoxy-coated wire strand are all related to a project located in Ohio, involving the Ohio Department of Transportation, and will be resolved under state law by the Ohio Court of Claims. In addition, with respect to whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending,

the Court notes that the action in the Ohio Court of Claims includes all of the relevant parties and would allow for more efficient resolution of the relevant claims. Likewise with respect to the issue of "unnecessary entanglement" due to "overlapping issues of fact or law," the Court notes that the action in the Ohio Court of Claims includes claims by DSI against Insteel that are identical to the declaratory judgment claim by Insteel in Count 2 in this case, with directly overlapping issues of fact or law that could result in inconsistent determinations. Finally, with respect to questions of "procedural fencing," the Court does not find any misuse or abuse of the declaratory judgment device by Insteel in filing the action in this Court, but nevertheless concludes that the claims raised in the declaratory judgment action in Count 2 are more appropriately and efficiently resolved in the ongoing litigation in the Ohio Court of Claims. Therefore, the Court will exercise its discretion under the Declaratory Judgment Act and decline to consider Insteel's request for declaratory judgment as raised in Count 2.

However, as noted above, Insteel has also asserted claims in Count 1 for breach of contract for the 2006 sales to DSI, which are unrelated to the 2002 sales of epoxy-coated wire strand at issue in the Ohio bridge litigation. When a complaint asserts claims for both declaratory relief and non-declaratory relief, the claims for non-declaratory relief are governed by the stricter Colorado River standard for abstention based on parallel state proceedings. Great American Ins. Co. v. Gross, 468 F.3d 199, 210 n.7 (4th Cir. 2006). Colorado River abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Colorado River, 424 U.S. at 813, 96 S. Ct. at 1236. Colorado River abstention applies if there are parallel federal and state suits and if "exceptional

7

circumstances" justify abstention, based on a consideration of "(1) whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights." Great American Ins. Co. v. Gross, 468 F.3d at 207-08.

Applying these factors in the present case, the Court notes first that it does not appear that there even is a parallel proceeding with respect to Count 1, since the Ohio Court of Claims is not considering or addressing any claims related to the 2006 sales between DSI and Insteel. To the extent DSI has attempted to bring a declaratory judgment action in the Ohio Court of Claims related to the 2006 sales, there is no indication that the Ohio Court of Claims is addressing or exercising jurisdiction over those 2006 claims, which do not relate to the 2002 sale of epoxy-coated wire strand and which do not involve the Ohio Department of Transportation. Therefore, there is no parallel proceeding as to Count 1 in state court. In addition, even if the Ohio Court of Claims action could be considered a parallel proceeding, the Court notes that the Count 1 breach of contract claims are properly before this Court, there are no other necessary parties that have been identified with respect to those claims, and there are no significant or exceptional circumstances with respect to those claims. The Court also notes that this federal forum is not inconvenient for either party. In addition, this Court obtained jurisdiction over these breach of contract claims first, and there is some question whether the Ohio Court of

8

Claims could even provide complete resolution of these claims raised in Count 1, which do not involve the Ohio Department of Transportation or any other state entity. In addition, although the dispute over the 2002 epoxy-coated wire strand will be resolved in the Ohio Court of Claims, it appears that the separate breach of contract claims can be resolved in this Court without resulting in piecemeal litigation, in light of the fact that the breach of contract claims relate solely to the separate 2006 transactions. Therefore, the Court concludes that to the extent that there even is a parallel proceeding with respect to Count 1, which is doubtful, there are no "extraordinary circumstances" that would require the Court to abstain from exercising jurisdiction over the breach of contract claims asserted in Count 1.

Having so concluded, the Court notes that ordinarily, if claims for non-declaratory relief are properly before the Court, and if "the claims for which declaratory relief are requested are so closely intertwined with the nondeclaratory claims, 'judicial economy counsels against dismissing the claims for declaratory judgment relief.'" Great American Ins. Co. v. Gross, 468 F.3d at 210 (quoting Chase Brexton Health Servs. v. Maryland, 411 F.3d 457, 466 (4th Cir. 2005)). However, in the present case, the claims in Count 1 for breach of contract related to the 2006 sales are not intertwined with the claims in Count 2 for declaratory relief related to the 2002 sales of epoxy-coated wire strand. Instead, the claims relate to different contracts for different products and shipments with unrelated issues. The only potential connection to the claims raised in Count 1 is that DSI apparently has sought to "set-off" amounts it may owe Insteel under the 2006 contracts against amounts it has claimed against Insteel related to the 2002 project. However, under the Uniform Commercial Code § 2-717, a buyer may only deduct

9

damages for breach of contract from any amounts still owed "under the same contract." There is no basis based on the information presently before the Court to conclude that the agreement involved in Count 2 for the sale of epoxy-coated wire strand is the "same contract" as the separate 2006 purchases that form the basis of the claims in Count 1. Therefore, having considered the various claims asserted, the Court finds that there are no apparent overlapping factual or legal issues with respect to Counts 1 and 2, and in these limited circumstances, judicial economy would not require proceeding with the declaratory judgment claims simply because there are unrelated breach of contract claims (for completely separate contracts) properly before the Court.[4]

Moreover, the Court notes that any concerns regarding proceeding only as to Count 1 can be addressed by issuing a stay as to Count 2 rather than an outright dismissal as to Count 2. In this regard, the Supreme Court has noted that "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." Wilton, 515 U.S. at 288 n.2, 115 S. Ct. at 2143 n.2. Thus, with respect to the Court's decision to decline to entertain the claim for declaratory judgment in Count 2, a stay of that claim is preferable, and such a stay has the additional benefit of

---

[4] The Court notes that Federal Rule of Civil Procedure 21 gives the Court discretion to sever claims in order to address the failure to join a necessary party or to promote the efficient administration of justice, and Rule 42(b) also provides the Court with discretion to allow separate proceedings and trials for claims that are joined together as a result of the broad joinder provisions of Rule 18. However, in view of the Court's discretion under the Declaratory Judgment Act, the Court in this case will not formally sever the claims, and will instead decline to consider the declaratory judgment claim but will allow the separate breach of contract claims to proceed.

allowing the Court to reopen proceedings as to Count 2 if further developments warrant. Therefore, at the present time, the Court in its discretion concludes that the declaratory judgment claim in Count 2 should be stayed in favor of the Ohio proceedings, pursuant to the Court's discretionary authority under the Declaratory Judgment Act.[5] However, the Court further concludes that there is no basis to stay the proceedings as to the unrelated claims in Count 1, which are properly within this Court's jurisdiction.

IT IS THEREFORE ORDERED that Defendant DSI's Motion to Dismiss or Stay [Doc. #46] is GRANTED IN PART, and the declaratory judgment claim asserted in Count 2 is STAYED pursuant to the Court's discretionary authority under the Declaratory Judgment Act. IT IS FURTHER ORDERED, HOWEVER, that Defendant DSI's Motion to Dismiss or Stay is DENIED as to Count 1, and Defendant DSI must file an answer or other response to the claims asserted in Count 1 within 21 days of the entry of this Order. FINALLY, IT IS ORDERED that either party may file a motion to lift the stay as to Count 2 if further developments so warrant in light of the Court's conclusions set out above.

This, the 15th day of June, 2010.

_____
United States District Judge

---

[5] Having reached this conclusion, the Court need not consider DSI's alternative contention that this action should be dismissed for failing to join a necessary party. However, the Court notes that those contentions can be considered if either party moves to reopen the proceedings as to Count 2 in the future. As noted above, there is no contention that any other party is a necessary party as to Count 1.